**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CENTER FOR COMMUNITY JUSTICE
AND ADVOCACY,

        Plaintiff,

v.                                                 Case No. 10-cv-10011
                                                Paul D. Borman
                                                United States District Judge

RBS CITIZENS, N.A., and
CCO MORTGAGE,

        Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

**I.  INTRODUCTION**

        Plaintiff filed the Second Amended Complaint[1] on August 13, 2010 (Dkt. No. 24).

Center for Community Justice and Advocacy ("CCJA" or "Plaintiff") claims that RBS Citizens,

---

[1] This is the Second Amended Complaint in this case. The original Complaint was filed on January 4, 2010 (Dkt. No. 1), along with an application for appointment of counsel (Dkt. No. 3). The first Complaint was improper because it was filed by CCJA's Executive Director, Kim Boyd-Harris, who is a not a lawyer and cannot represent CCJA in court. Subsequently, the parties stipulated to the filing of an Amended Complaint. *See* Stipulation and Order (Dkt. No. 9). The First Amended Complaint was filed on March 30, 2010. (Dkt. No. 11). Because Plaintiff had by then retained counsel, the Court denied its application for appointment of counsel. (Dkt. No. 12). Plaintiff had actually retained two lawyers, Nansi Irene Rowe and Vanessa G. Fluker, both of whom filed to withdraw on May 20, 2010 (Dkt. Nos. 13 & 14). At the hearing on the Motions to Withdraw, Ms. Boyd-Harris stated that she had decided to retain Ms. Fluker as CCJA's attorney. (Tr. 7 (Dkt. No. 19)). At that hearing, Plaintiff also repudiated the First Amended Complaint. Thereafter, the Court granted Attorney Rowe's Motion to Withdraw, and allowed Attorney Fluker to file the Second Amended Complaint.

N.A. and CCO Mortgage Company[2] ("Defendants") engaged in racially discriminatory real estate practices.

The Second Amended Complaint alleges that Defendants violated: 42 U.S.C. § 3605 of the Fair Housing Amendments Act of 1988 ("FHAA") (Count I); 42 U.S.C. §§ 1981 and 1982 (Count II); 15 U.S.C. §§ 1691-1691f of the Equal Credit Opportunity Act ("ECOA") (Count III); contractual obligations under the Federal Home Affordable Modification Program ("HAMP") and the Economic Stabilization Act of 2008 (Count IV); and the Michigan Eliot-Larsen Civil Rights Act (Count V).

Defendants filed the instant Motion to Dismiss on October 12, 2010 (Dkt. No. 29). Plaintiff responded on November 15, 2010 (Dkt. No. 31), and Defendants replied on December 7, 2010 (Dkt. No. 33). Oral argument was held on December 22, 2010.

For the reasons stated below, the Court will grant Defendants' Motion to Dismiss.

## II.  BACKGROUND

The facts alleged in the Second Amended Complaint are taken as true for purposes of this Motion.  *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

Plaintiff is a nonprofit corporation based in Detroit, Michigan.  Plaintiff's purpose is to further equal housing opportunities throughout Southeast Michigan, and Plaintiff provides a number of services and outreach efforts in this regard, including receiving and investigating complaints of fair housing violations.

Plaintiff alleges that Defendants "unfairly serviced the loans of African American

---

[2]According to the Complaint, Defendant CCO Mortgage Company became a subsidiary of Defendant RBS Citizens, N.A., on September 1, 2007.  (Compl. ¶ 11).

borrowers residing in Detroit, Wayne County . . . while simultaneously creating greater advantage for borrowers residing in Grosse Pointe, Wayne County[.]" (Compl. ¶ 18). Plaintiff, citing census data, alleges that over 80 percent of Detroit residents are African American, while over 90 percent of Grosse Pointe residents are white. Plaintiff claims that African Americans were specifically discriminated against in loan origination and servicing, refinancing, and foreclosure sales. (Compl. ¶ 21).

Plaintiff attached data from Defendants' 2008 Home Mortgage Disclosure Act ("HMDA") report, reflecting that out of 16 African American home loan applicants, Defendants originated six loans. That same year, Defendants received 57 home loan applications from white applicants and originated 26. Plaintiff also notes that 155 applications for refinancing were received from African Americans, but only 24 were refinanced. Defendants received 347 refinancing applications from white individuals and granted 110. In 2007, Defendants received 46 loan applications from African Americans but only originated 11, while 51 out of 114 white applicants had loans originated. Defendants refinanced 82 out of 366 loan applications for African Americans, while whites had 348 out of 872 loans refinanced by Defendants in the same year. Significantly, Plaintiff does not allege that the African American applicants who were rejected were similarly situated to white applicants who were not rejected.

Plaintiff also alleges that at foreclosure sales, Defendants bid "substantially higher than fair market values on the home [sic] of African Americans and bid[] lower on the homes of Whites." (Compl. ¶ 25). Plaintiff cites four specific examples, two in which Defendants repurchased property in Grosse Pointe for an amount less than the debt owed, and two in which Defendants repurchased property in Detroit for an amount only slightly less or greater than the

3

debt owed. Significantly, Plaintiff does not allege whether the former owners of the Detroit and Grosse Pointe properties were white or African American, or whether the properties themselves were comparable.

Plaintiff's claimed damages are as follows:

> As a direct and proximate result of Defendant RBS Citizens N.A.'s discriminatory actions, CCJA has been directly obstructed, frustrated and damaged from fulfilling its mission to eradicate practices that deny equal housing and financing to all persons without regard to race or color.
>
> Further, such discriminatory action by Defendant RBS Citizens N.A. has diverted scarce resources of the CCJA from its other activities in order to counteract Defendant RBS Citizens N.A.'s unlawful actions.
>
> Plaintiff's consumers were and continue to be injured by failure of Defendant to engage in meaning [sic] loss mitigation including but not limited to modifications, workouts, forbearance or other foreclosure prevention measure resulting in foreclosure and loss of homeownership [sic].

(Compl. ¶¶ 29-31).

The factual allegations Plaintiff provides relating to its diversion of resources, are as follows:

> Plaintiff's African American clients were treated differently than White clients by Defendant CCO Mortgage with respect [sic] modification and servicing on their loans. Plaintiff's African American client, AT by and through Plaintiff requested information from Defendant CCO, regarding the servicing of the loan and to prevent default and any potential foreclosure. Defendant CCO refused to respond.
>
> Plaintiff's White client, SL was not only provided information and servicing assistance, but even after default and during foreclosure proceedings had the interest rate of the mortgage reduced to 2.74%.

4

(Compl. ¶¶ 27 and 28).  Again, Plaintiff does not allege that its African American client, AT, and its white client, SL, were similarly situated with similar credit history, job status, etc.  All of Plaintiff's other factual allegations refer to the publicly available census and HMDA data, and do not indicate any efforts undertaken by CCJA to investigate Defendants or educate the public as to Defendants' allegedly discriminatory behavior.

The Court finds it relevant to discuss Plaintiff's only comparable, Mrs. AT's recent housing litigation history, where she was represented by Plaintiff's counsel in the instant case, Vanessa Fluker, Esq., because it undermines any claim of AT as a "comparable." This in turn undermines Plaintiff's claims.

At this Court's December 22, 2010 hearing, counsel for Plaintiff, Vanessa Fluker, Esq., stated that the Plaintiff's African American client identified as AT in the instant case, was Asha Tyson, (Hr'g Tr. 10-11) whom Ms. Fluker had represented in foreclosure proceedings brought by Defendants RBS Citizens N.A., and CCO Mortgage on her Detroit Riverfront Towers residence in state court.

Most recently, Ms. Tyson via Attorney Fluker, had filed a 2010 state court challenge in the City of Detroit 36th District Court, Case No. 10-306868-LT.  While the case was ultimately dismissed by Judge Vanesa Jones Bradley, Judge Bradley concluded that Attorney Fluker had misled the state court into believing that Ms. Tyson was a named plaintiff in the instant case, and that Tyson had used that falsity to improperly delay the State Court proceeding.[3]  The relevant transcript portions of the State District Court hearing on April 6, 2010, in *CCO Mortgage and*

---

[3] Ms. Asha Tyson had filed a previous State Court complaint in 2008 against Defendant which had been dismissed by Wayne County Circuit Judge Robert J. Columbo, Jr., discussed *infra*.

*RBS Citizens Bank v. Asha Tyson*, read as follows:

>   The Court: I take it, Ms. Fluker, your client is objecting to the termination of tenancy?
>
>   Ms. Fluker: Yes, your Honor. I attached as my Exhibit 1, the Amended Complaint to Federal Court. You also have a copy of the complete civil docket as well as the exhibits from Federal Court identifying the Defendant, Borrower D, in this multiple party action brought by the Center for Community Justice and Advocacy. . . .
>
>   The Court: <u>Your client is not the only party</u> –
>
>   Ms. Fluker: <u>Exactly</u>.
>
>   The Court: <u>– to this suit in Federal Court</u>.
>
>   Ms. Fluker: <u>Exactly</u>. <u>And there are numerous parties</u>. And obviously this is an issue of irreparable harm.

Pp. 3-4.

>   Mr. Wells: [Representing CCO Mge. Corp & RBS Bank] She [Ms. Tyson] had borrowed from, pursuant to a mortgage, over $300,000 in purchased condo units in the Riverfront Towers in 2005.
>   
>   Since February 1st of 2007, she has not made a payment on the mortgage. She has not paid taxes. She has not paid interest. And there is a judgment against her by the condo association in excess of $80,000 for unpaid association dues.
>   
>   The bank declared a default on multiple occasions to try to
>
>   The Court: On the failure to pay the association dues?
>
>   Mr. Wells: And failure to pay the bank. The bank initiated foreclosure by advertisement proceedings on multiple occasions, only to be interfered with by two, if not three, bankruptcies which had all been dismissed because they had been improperly filed.
>   
>   The bank went to foreclosure by advertisement in April of 2008. And was the

> highest bidder at the foreclosure proceeding.
> <u>In November of 2008, Ms. Tyson filed a [state court complaint: Circuit Judge Robert J. Columbo, Jr.] complaint against the bank alleging essentially the same thing, that they're now trying to allege in Federal Court</u>.  The case pended for over a year and a half in front of Judge Columbo.
> . . . .
> Judge Columbo . . . ruled entirely in the bank's favor and dismissed Ms. Tyson's case.  That happened on January 10, 2010. And there has been no appeal filed.
> That's a final Order.  It's Res Judicata.  It's done. There's no other issues.

State Dist. Ct. April 6, 2010, Tr. Pp. 6-8 (emphasis added).  Thus, State Circuit Judge Columbo had dismissed Ms. Tyson's case earlier in 2010.  A State District Court is a lower court under the Michigan judicial hierarchy.  Nevertheless, Ms. Tyson's attorney, Ms. Fluker, filed the later claim in the State District Court after the Circuit Court had ruled.  And, as Ms. Tyson's attorney, Ms. Fluker purposely mislead the District Judge into believing that Ms. Tyson was a Party Plaintiff in the instant case.

Thus, State District Court Judge Bradley, under the erroneous assumption that Ms. Tyson was a party to the Federal proceeding, stayed her proceeding "for a few months . . . so we can stay on top of this as the matter progresses in Federal Court." State District Court, April 6, 2010, Tr. Pp. 17-18.

At the next state district court proceeding before Judge Bradley on September 15, 2010, counsel for Defendant stated as follows:

> Mr. Stancato:  And when the parties were here before you last, Ms. Fluker led you to believe that Ms. Tyson was one of the parties in that federal case; that's not true. . . .

> The Court: Let me stop you there because that's crucial.
> . . . .
> Is Asha Tyson a party to the federal matter pending; yes or no?
>
> Ms. Fluker: Your Honor, she is a comparable in the federal case.
>
> The Court: Yes or no, is she a named party in the federal action? Because the Court was led to believe that she was a named party in the federal action.
>
> Ms. Fluker: She is not named on the caption.
> . . . .
> The Court: But, this Court was led to believe that your client was actually a named party in that action.
> . . . .
> What I have heard this morning, Ms. Fluker, is that no, she is not a named party in action. And no, there is not a class action under which she could fall.

State Dist. Ct. Sept. 15, 2010 TR. Pp. 13-15. (Emphasis added)

At that point, the Judge ordered:

> The Court: I'll tell you, because the Court finds she is not a member of the certified class nor is she a named party in the federal action, this case is proceeding.

*Id*. P. 18. State District Judge Bradley, reiterating Circuit Judge Columbo's ruling, held:

> The Court: Well, it's been determined that there was, in fact, a valid foreclosure.
>
> Ms. Fluker: And we're saying that there were issues that were not known at that time and available.

8

>   The Court:   Then your remedy would have been to appeal [sic] Circuit Court's decision or file for re-hearing on those issues. But, you didn't do that.

*Id.* Tr. P. 24.

>   Ms. Fluker:   I will by [be] filing an appeal.

*Id.* Tr. P. 43. Ms. Fluker is appealing the state district court's decision that held that the state circuit court's decision by Judge Columbo, that she did not appeal, is the law of the case. On January 8, 2010, Wayne County Circuit Judge Robert J. Colombo, Jr., in a case where Ms. Tyson had filed suit against the instant defendants, CCO Mortgage and RBS Citizens Bank N.A., issued a "Judgment Granting RBS Citizens N.A. and CCO Mortgage Corp's Summary Disposition Motion and Dissolving this Court's November 26, 2008 Injunctive Order and Temporary Restraining Order." *Tyson v. CCO Mortgage Corp. et. al.*, 08-106025-CZ.

In misrepresenting the parties to the instant case, Attorney Fluker delayed the state court proceedings, thereby delaying the eviction of Ms. Tyson. Ms. Tyson had been ordered evicted on May 15, 2010, scheduling eviction on or after September 27, 2010. Ms. Tyson filed an appeal on September 24, 2010 (Defs' Motion, Ex. C-Claim of Appeal). On October 12, 2010, Attorney Fluker filed a Motion to Stay and for Escrow Order in Lieu of Appeal Bond on behalf of Ms. Tyson.

Ms. Tyson had also been sued in a separate action by her condominium association. On June 30, 2009, Wayne County Circuit Judge Amy Hathaway entered an order against Asha Tyson granting "Plaintiff Riverfront Condominium Associations Motion for Summary Disposition Under MCR 2.116(c)(10) and Judgment for Foreclosure Against Defendant Asha K. Tyson." *Riverfront Condominium Association v. Asha K. Tyson, et. al.*, #07-715856, Wayne

County Circuit Court. That judgment against Defendant Tyson for $88, 457.77 concluded two cases filed against her: 07-715856-CH, and 07-715857-CH.

Specifically, Plaintiff's comparable had been receiving responses from Defendants RBS Bank and CCO Mortgage in the continuous State proceedings, in which she had been ruled against. This undermines any claim that Defendants were not responding to AT's claims. Indeed, Defendants were tied up in litigation, responding to case after case, filed by Ms. Tyson, via Attorney Fluker, and Defendants had prevailed time after time.

As to the instant case, Plaintiff has named only one individual client, Asha Tyson, on whose behalf it allegedly expended additional resources in an attempt to renegotiate her mortgage. Plaintiff has not alleged that Ms. Tyson is comparable to its white client, SL. Further, Plaintiff has not denied that Defendants' refusal to respond to their requests on behalf of Ms. Tyson was related to ongoing state litigation between Ms. Tyson and Defendants.

The remainder of Plaintiff's Second Amended Complaint relates to its 136 pages of exhibits, which consist of publicly available information, and do not specifically relate to any transactions where Plaintiff acted on behalf of any of its clients.

Indeed, Ms. Tyson's history, in the State Courts against the instant Defendant, where they have been responding to her claims time and again, establish facts that undermine any sort of "comparable" claim by Plaintiff in the instant case. Additional facts establishing the "uniqueness" and "non-comparable" nature of Asha Tyson are her ongoing activities in the U.S. Bankruptcy Court. Ms. Tyson has been a serial bankruptcy filer in the Eastern District of Michigan: Case No. 07-58732, filed September 19, 2007, closed May 9, 2008; Case No. 08-42685, filed February 6, 2008, closed August 27, 2008; Case No. 09-54336, filed May 6, 2009,

closed March 4, 2010.

### III.  LEGAL STANDARD

Defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). Under this rule, the Court construes the Complaint in a light most favorable to Plaintiff and accepts as true all factual allegations.  *In re DeLorean Motor Co.*, 991 F.2d at 1240.  The Complaint need only give Defendants "fair notice" of Plaintiff's claim and grounds for relief. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89 (2007)).  The Court does not weigh the evidence, but "instead, the [C]ourt should deny the motion unless it is clear that . . . [P]laintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief."  *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  Although this is a liberal standard, "it requires more than the bare assertion of legal conclusions."  *In re DeLorean Motor Co.*, 991 F.2d at 1240.  "A plaintiff falls short if [it] pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct . . . .'" *Albrecht v. Treon*, 617 F.3d 890 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 1950 (2009)).

### IV.  ANALYSIS

Defendants argue that Plaintiff has not alleged sufficient facts to satisfy the standing

requirement. Standing is a jurisdictional requirement.[4] *Coal Operators and Associates, Inc. v. Babbit*, 291 F.3d 912, 915 (2002). "To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *Id*. at 916. In addition to the Article III requirement, a plaintiff must also satisfy "prudential standing" requirements. "These additional restrictions enforce the principle that, as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009) (citation omitted). For an organization to have standing, it must allege "a concrete and demonstrable injury, including an injury arising from a purportedly illegal action that increases the resources the group must devote to programs independent of its suit challenging the action." *Hooker v. Weathers*, 990 F.2d 913 (6th Cir. 1993) (citation and internal quotation marks omitted).

Defendants argue that Plaintiff does not meet the requirements for either Article III or prudential standing; Defendants' basis for both arguments is that Plaintiff has not sufficiently alleged that it has suffered an injury.[5] Specifically, Defendants assert that the alleged injuries – that Plaintiff "has been directly obstructed, frustrated and damaged from fulfilling its mission"

---

[4] Although dismissal for lack of subject matter jurisdiction is properly brought under Fed. R. Civ. P. 12(b)(1), dismissal for lack of standing is properly brought under either Rule 12(b)(1) or Rule 12(b)(6). *See generally Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 530-31 (6th Cir. 2002).

[5] Defendants' argument regarding prudential standing does not apply to Plaintiff's claim under the Fair Housing Act (Count I), because Congress has excepted this claim from the prudential standing requirement. *See Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 Fed. Appx. 469, 472 (6th Cir. 2006).

and "has diverted scarce resources . . . from its other activities" – are legal conclusions with no factual basis alleged in the Second Amended Complaint.

In response, Plaintiff cites the case *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), as support that it has properly alleged an "injury" for standing purposes. In *Havens Realty*, the Supreme Court held that the plaintiff had sufficiently alleged an injury where "[i]t asserted that the steering practices of [the defendant] had frustrated the organization's counseling and referral services, with a consequent drain on resources." *Id*. at 369. Plaintiff argues that dismissal is improper because it has claimed the same type of damages as the plaintiff in *Havens Realty*. More precisely, Plaintiff states that it has claimed compensatory damages for diversion of resources and frustration of mission, which were the claimed damages in *Havens Realty*. *See Id*.

## V. DISCUSSION

The Complaint at issue in this case is different from that in *Havens Realty*, which alleged "concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources[.]" 455 U.S. at 379. In interpreting *Havens*, the Sixth Circuit has repeatedly held that organizational standing requires some investigation on the part of the organization. In *Housing Opportunities Made Equal, Inc. v. The Cincinnati Enquirer, Inc., A Division of Gannett Co., Inc.*, 943 F.2d 644 (6th Cir. 1991), the Court held:

> HOME alleges that defendant's discriminatory advertising has deterred potential renters from seeking housing at the advertised complexes. *This, in turn, has caused HOME to devote resources to investigate* and negate the impact of these advertisements.

*Id*. at 646 (emphasis added). Likewise, in *Hooker*, 990 F.2d 913, the Court noted and held:

> According to the complaint, "Fair Housing Contact Services

13

> *conducted an investigation* and confirmed the facts and
> circumstances alleged [in the complaint]." *FHCS devoted
> resources to investigate the defendants' practices* and alleges that
> it has confirmed that defendants do discriminate on the basis of
> familial status. Therefore, FHCS has standing.

*Id*. at 915 (emphasis added). Again, in *Fair Housing Council, Inc., v. Village of Olde St. Andrews, Inc.*, 210 Fed. Appx. 469 (6th Cir. 2006), the Sixth Circuit revisited the *Hooker* case, stating that "the *Hooker* Court made clear that an organization suffers a concrete injury sufficient to confer standing when it devotes resources to training and deploying testers to investigate suspected instances of discrimination." *Id*. at 477.

In the instant case, Plaintiff has not alleged that it employed testers or that it performed any investigation whatsoever of Defendants' loan activities. Plaintiff's sole factual allegation relating to its diversion of resources merely shows that Plaintiff had more difficulty negotiating on behalf of its client Asha Tyson, while it had less difficulty negotiating on behalf of one white client, SL. Plaintiff does not allege that these clients were similarly situated, much less set forth facts indicating that they were similarly situated. The Court notes that, by all indications, these clients likely were not similarly situated, as noted *supra* at Part II. Plaintiff also does not allege that its negotiating on Ms. Tyson's behalf was part of an investigation into Defendants' racially discriminatory practices. Further, given Asha Tyson's history of serial bankruptcy filings and multiple litigation scenarios in state courts, there is no likelihood of a comparable; certainly nothing comparable is alleged.

Plaintiff alleges that certain individuals in Detroit and Grosse Pointe – referred to as Borrowers A-D in the Second Amended Complaint – were treated differently by Defendants on the basis of their race. However, Plaintiff does not state that these individuals were "testers," or

14

that they were otherwise part of an investigation by Plaintiff.  Plaintiff has also failed to allege that, if any investigation did occur, it occurred prior to the instant case.  *Fair Housing Council*, 210 Fed. Appx. at 475 (holding that a plaintiff must "show some injury that is independent of the costs of litigation . . .").  *See also Hughes v. Peshina*, 96 Fed. Appx. 272 (6th Cir. 2004) (holding that plaintiff had standing where it "devoted its efforts to investigating whether [defendants] had violated the law . . ."); *Memphis Ctr. for Indep. Living v. Woodglen Village Apartments P'ship*, No. 08-2121, 2010 WL 145351, *4 (W.D. Tenn. Jan. 8, 2010) (holding that "Plaintiff has failed to allege that any of its resources were diverted *to investigate or counteract* Defendants' alleged actions prior to litigation and independent from this litigation) (emphasis added).

Taking Plaintiff's factual allegations as true, the Court is left with little more than Plaintiff's conclusory allegations that it had to devote more resources to renegotiate a mortgage for one client than it did for another.  And that client, Asha Tyson, was not in any way comparable to the other party.  More is required to survive a motion to dismiss.  *Ashcroft*, 129 S.Ct. 1950.  Accordingly, the Court will grant Defendants' Motion and dismiss Plaintiff's Complaint.

## VI.  CONCLUSION

For the reasons stated above, the Court will:

(1)  **GRANT** Defendants' Motion to Dismiss, and

(2) **DISMISS** the Second Amended Complaint **WITH PREJUDICE**.

This closes the case.

**SO ORDERED.**

                                        S/Paul D. Borman  
                                        PAUL D. BORMAN  
                                        UNITED STATES DISTRICT JUDGE

Dated: March 7, 2011

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 7, 2011.

                                        S/Denise Goodine  
                                        Case Manager